Stein, J.
Appeal from an order of the Supreme Court (Crowell, J.), entered May 7, 2013 in Saratoga County, upon remittal, ordering, among other things, defendant to pay certain child support.
Plaintiff (hereinafter the father) and defendant (hereinafter the mother) were married in 1996 and are the parents of twin sons (born in 1996) and a daughter (born in 2004). The father commenced this divorce action in February 2009 seeking, among other things, custody of the children and child support. After a trial, Supreme Court (Brown, J.H.O.) issued a judgment of *1140 divorce which, among other things, awarded the parties joint legal custody and ordered that the children’s primary residence would be with the father. Nonetheless, the court designated the father as the noncustodial parent because he was the higher income producer, and directed him to pay child support. On appeal, we found that the father was the custodial parent and should not have been directed to pay child support; we, therefore, modified the judgment of divorce and remitted the matter to Supreme Court for a determination of the appropriate amount of child support, if any, to be paid by the mother (97 AD3d 923 [2012]).
Upon remittal and after a hearing, Supreme Court (Crowell, J.) calculated the mother’s presumptive weekly child support obligation to be $258.33, but concluded that it would be “just and appropriate” to reduce it to $30 per week. The court also directed that child support be paid retroactive to the date of the judgment of divorce, excluding a nine-month period when the mother was unemployed and received inpatient treatment for alcohol dependency. Finally, the court denied the father’s request for recoupment of the child support payments he made to the mother pursuant to the judgment of divorce. Upon the father’s appeal, we now modify.
The father challenges Supreme Court’s calculation of the mother’s child support obligation on various grounds. Initially, he argues that the court should have imputed income to the mother based on her 2009 earnings of approximately $70,000 from her employment as an echocardiogram technician at a local hospital. We disagree. The proof showed that the mother was terminated from such employment in June 2011 and that, in March 2012, she obtained a comparable position at a different hospital earning $55,000 annually. While there was some evidence that the mother’s alcohol dependency may have played a role in her termination, the record reflects that the mother’s previous employer gave as the reason for her termination that her position was being eliminated due to the downsizing of her department. She obtained her current position after an employment search within her field, which yielded limited opportunities because her field was “[d]ownsizing.” Under these circumstances, we are of the view that the mother’s 2012 income accurately reflected her earning potential and we discern no abuse of Supreme Court’s considerable discretion in declining to impute income to her based on her pretermination income (see Sadaghiani v Ghayoori, 83 AD3d 1309, 1312 [2011]; Matter of Disidoro v Disidoro, 81 AD3d 1228, 1230 [2011], lv denied 17 NY3d 705 [2011]; Armstrong v Armstrong, 72 AD3d 1409, 1413 [2010]).
*1141 We do, however, find merit to the father’s argument that Supreme Court erred in calculating and fixing the amount of the mother’s support obligation. First, Supreme Court estimated the mother’s income in 2012 to be approximately $50,000, whereas her pay stubs and her 2012 tax return indicate that her annualized income from employment was approximately $55,000. After taking the appropriate Medicare and Social Security deductions, the parties’ combined parental income is $154,039.50 (see Domestic Relations Law § 240 [1-b] [b] [4]),[1] and, applying the appropriate percentage (29%) (see Domestic Relations Law § 240 [1-b] [b] [3] [iii]; [c] [2]), their combined child support obligation is $44,671.45.[2] Applying the mother’s pro rata share (33%), her obligation is $14,741.58 annually, or $283.50 per week. Such amount is presumptively correct unless determined in the trial court’s discretion to be “ ‘unjust or inappropriate’ ” (Bast v Rossoff, 91 NY2d 723, 727 [1998], quoting Domestic Relations Law § 240 [1-b] [f]; see Matter of Cassano v Cassano, 85 NY2d 649, 654 [1995]; Riemersma v Riemersma, 84 AD3d 1474, 1477 [2011]) after consideration of various factors including, among others, the financial resources of the parents, a substantial disparity in income, the attendant tax consequences (see Domestic Relations Law § 240 [1-b] [fj), and “[a]ny other factors the court determines are relevant” (Domestic Relations Law § 240 [1-b] [¶] [10]; see Matter of Kelly v Kelly, 90 AD3d 1295, 1296-1297 [2011]; Riemersma v Riemersma, 84 AD3d at 1477).
Although we agree with the father that some of the factors considered by Supreme Court did not justify a deviation from the presumptive amount,[3] we concur with the court’s ultimate conclusion that a deviation was appropriate under the circumstances here. Most significantly, as Supreme Court noted, the father’s income is twice that of the mother and such a disparity, alone, can justify a deviation (see Riemersma v Riemersma, 84 AD3d at 1478). The father also receives significant tax deductions and credits for the children, whereas the mother receives none (see Domestic Relations Law § 240 [1-b] [¶] [4]). Addition *1142 ally, the mother is responsible for paying a significant portion of the children’s uninsured health-related and child-care expenses, as well as other costs associated with her extended and substantial parenting time, all of which impact the mother’s financial resources (see Domestic Relations Law § 240 [1-b] [¶] [1]). As Supreme Court also noted, the mother purchased a home within the children’s school district to facilitate the custodial arrangement, as a result of which she has a significant commute to work, with its attendant expenses. Giving careful consideration to the relevant factors, we discern no abuse of Supreme Court’s discretion in concluding that the presumptive amount of child support attributable to the mother is unjust or inappropriate.[4] Nonetheless, Supreme Court’s reduction to $30 weekly was excessive and, upon our own factual review, we find $150 per week to be “just and appropriate” under the circumstances present here (Domestic Relations Law § 240 [1-b] [g]).
We also agree with the father that the mother’s child support obligation should have been made retroactive to February 9, 2009, the date the father made a specific demand therefor in his complaint (see Domestic Relations Law § 236 [B] [7] [a]; Vertucci v Vertucci, 103 AD3d 999, 1006 [2013]; Ungar v Savett, 84 AD3d 1460, 1461-1462 [2011]). Nonetheless, contrary to the father’s contention that the calculation of the retroactive amount due should not take into account the mother’s unemployment from June 2011 through March 2012, we are of the view that such calculation should reflect that, during this time, the mother was seeking treatment for alcohol dependency and was searching for new employment, while receiving modest unemployment benefits.[5] Inasmuch as the mother’s income while unemployed placed her close to or below the poverty income guidelines, child support for that period should have been fixed at $25 per month (see Domestic Relations Law § 240 [1-b] [d]). Accordingly, remittal is required for a determination of the appropriate amount of retroactive support.
The father’s further contention that he is entitled to a credit against equitable distribution for the child support he paid to the mother pursuant to the divorce judgment is unavailing. Inasmuch as he could have raised this issue in his prior appeal from the judgment requiring him to pay child support, his failure to do so constitutes a waiver thereof (see e.g. Dimery v Ulster *1143 Sav. Bank, 82 AD3d 1034, 1034 [2011], appeal dismissed 17 NY3d 774 [2011]; Goncalves v Stuyvesant Dev. Assoc., 244 AD2d 267, 268 [1997]). Even if such argument was not waived, we cannot agree that recoupment is appropriate based solely on the fact that the father was erroneously ordered to pay child support in the first instance. Assuming, without deciding, that recoupment would not violate public policy (see Johnson v Chapin, 12 NY3d 461, 466 [2009]; Baraby v Baraby, 250 AD2d 201, 205 [1998]; compare People ex rel. Breitstein v Aaronson, 3 AD3d 588, 589 [2004]), we are unable to determine from the record before us whether the particular circumstances of this case — including, for example, the mother’s financial resources and proof as to whether recoupment would detract from her ability to meet her reasonable needs, her child support obligation and/or the needs of the children while under her care— mitigate in favor of granting such relief.
To the extent not specifically addressed, the parties’ remaining contentions have been considered and found to be without merit.
Peters, PJ., McCarthy and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by increasing defendant’s child support obligation to $150 per week, retroactive to February 9, 2009, except for the period of June 2011 through March 2012, during which time defendant’s child support obligation is $25 per month; matter remitted to the Supreme Court for calculation of retroactive arrears; and, as so modified, affirmed.

. $103,247 for the father plus $50,792.50 for the mother.

. Neither party challenges Supreme Court’s application of the percentage to the entire combined parental income, including that in excess of the statutory cap (see Domestic Relations Law § 240 [1-b] [c] [3]).

. For example, costs associated with providing suitable housing, food and clothing for the children during custodial periods are not extraordinary expenses that would justify a deviation (see Riemersma v Riemersma, 84 AD3d at 1477). In addition, Supreme Court offered no explanation for its conclusion that a deviation was warranted based upon the “emotional support” provided by the mother during her substantial parenting time.

. While Supreme Court did not expressly state that the presumptive amount was unjust or inappropriate, the only plausible reading of its decision manifests such a finding.

. According to her tax returns, she earned a total of approximately $10,000 in unemployment benefits between June 2011 and March 2012.