Allen v Allen (2020 NY Slip Op 00331)





Allen v Allen


2020 NY Slip Op 00331


Decided on January 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 16, 2020

526463

[*1]Robin M. Allen, Respondent,
v
Bryan . Allen, Appellant.

Calendar Date: December 18, 2019

Before: Garry, P.J., Egan Jr., Aarons, Pritzker and Colangelo, JJ. 


Alderman and Alderman, Syracuse (Richard B. Alderman of counsel), for appellant.
Barton Law Firm, LLP, Elmira (Christopher A. Barton of counsel), for respondent.



Pritzker, J.
Appeals (1) from a judgment of the Supreme Court (Mulvey, J.), entered October 22, 2015 in Chemung County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court, and (2) from an order of said court, entered January 11, 2016 in Chemung County, awarding counsel fees to plaintiff.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1999 and have four children (born in 1998, 2000 and 2001). After the wife commenced this action for divorce in January 2013, an interim order of child support and maintenance was put in place by Family Court. A trial was thereafter held in June 2015 in Supreme Court, following which the court issued a judgment of divorce that, as relevant here, awarded the wife a distributive award from the appreciation of the marital residence, ordered the husband to pay the wife maintenance until their youngest child reaches 18 years old, set maintenance arrearages and awarded the wife child support. The court further found that the wife owed to the husband a child support liability, as he had sole custody of the parties' oldest child. The court ordered, however, that this payment be held in abeyance until the husband paid maintenance arrearages to the wife. Subsequently, the court issued an order, after a hearing, directing the husband to pay counsel fees to the wife. The husband appeals.
We turn first to the husband's contention that Supreme Court erred in awarding the wife a distributive award of $25,200 from the appreciation of the marital residence.[FN1] "It is well established that equitable distribution of marital property does not necessarily mean equal, and Supreme Court has substantial discretion in fashioning an award of equitable distribution" (Roma v Roma, 140 AD3d 1242, 1243 [2016] [internal quotation marks and citations omitted]). As relevant here, real property purchased prior to the marriage constitutes separate property not subject to equitable distribution, as "a parcel of real property that is separate property cannot be transformed or transmuted into marital property by the efforts and contributions of the nontitled spouse" (Macaluso v Macaluso, 124 AD3d 959, 961-962 [2015]; see Prokopov v Doskotch, 166 AD3d 1408, 1410 [2018]). However, "separate property contributions by a nontitled spouse could result in an appreciation of the value of the titled spouse's separate property during the marriage, which appreciation would be subject to equitable distribution" (Ceravolo v DeSantis, 125 AD3d 113, 117 [2015]; see Domestic Relations Law § 236 [B] [1] [d] [3]; Biagiotti v Biagiotti, 97 AD3d 941, 943 [2012]). The nontitled spouse bears "the burden of establishing that any increase in the value of the separate property was due at least in part to [his or] her
. . . efforts" (Robinson v Robinson, 133 AD3d 1185, 1187 [2015] [emphasis added]; see Arthur v Arthur, 148 AD3d 1254, 1255 [2017]).
The record reveals that the husband purchased the house approximately three months prior to the marriage, and therefore it is the husband's separate property (see Ceravolo v DeSantis, 125 AD3d at 116; Macaluso v Macaluso, 124 AD3d at 961-962). Thus, our inquiry turns to whether Supreme Court properly awarded the wife equitable distribution from the appreciation of this asset. We find that it did. At trial, the wife offered unrebutted testimony that she and the husband nearly doubled the size of the house while they lived there together. She also testified that she worked to improve the house after the marriage, including painting, landscaping and redoing the hardwood floors, roof and siding of the house. The husband did not challenge this testimony. The record reveals that the husband purchased the house for $57,000 and he and the wife agree that the value of the marital residence, at the time of trial, was $120,000. Given the wife's unrebutted testimony regarding her contributions, it was not error for Supreme Court to find that the house's "appreciation is due to the contributions or efforts of the nontitled spouse" (Biagiotti v Biagiotti, 97 AD3d at 943; see Prokopov v Doskotch, 166 AD3d at 1410). Nor do we discern any error in the amount of the distributive award. Despite the husband's contentions to the contrary,[FN2] it is clear from the record that Supreme Court took into account all of the necessary factors and, as such, we defer to the court's findings of fact and credibility and affirm this distributive award (see Arthur v Arthur, 148 AD3d at 1255; Lurie v Lurie, 94 AD3d 1376, 1378 [2012]).
The husband's contentions regarding maintenance awarded to the wife warrant little discussion.[FN3] First, the husband asserts that the duration of the maintenance, approximately six years and eight months, was an abuse of discretion and instead argues that an award of maintenance for four years would have been "more appropriate." The husband, however, fails to cite to any law or facts supporting this conclusory assertion. In any event, inasmuch as Supreme Court properly considered all of the relevant statutory factors, as well as the parties' predivorce standard of living, we discern no abuse of discretion in either the amount or the duration of maintenance awarded and, as such, decline to disturb it (see Pfister v Pfister, 146 AD3d 1135, 1137-1138 [2017]; Cervoni v Cervoni, 141 AD3d 918, 919-920 [2016]). Second, the husband contends that Supreme Court erred in failing to provide him a credit against his child support and maintenance obligations because he paid for the wife's shelter costs, including property taxes, homeowner's insurance and electricity bills while she and the children resided in the marital residence. However, because the husband was already contractually obligated to pay these expenses on his separate property, and a party in a dispute over child support or maintenance cannot get credit for performing their own pre-existing legal obligations to third parties, this contention has no merit (see Arthur v Arthur, 148 AD3d at 1257; McKay v Groesbeck, 117 AD3d 810, 811 [2014]).
We turn next to the respective child support obligations of the parties. "The Child Support Standards Act (see Domestic Relations Law § 240 [1-b] [hereinafter CSSA]) 'provides a precisely articulated, three-step method for determining child support. The first step requires the computation of combined parental income . . .. The court next multiplies the combined parental income figure . . . by a designated percentage based on the number of children to be supported, and then allocates that amount between the parents, applying each parent's respective portion of the total income to reach the amount of each parent's support obligation'" (Johnson v Johnson, 172 AD3d 1654, 1655 [2019], quoting Holterman v Holterman, 3 NY3d 1, 10-11 [2004]). After completing the three-step formula, the statute allows the court to deviate from the basic child support obligation upon proof that the award would be "unjust or inappropriate" (Domestic Relations Law § 240 [1-b] [f]; see Bast v Rossoff, 91 NY2d 723, 727 [1998]; Smith v Smith, 116 AD3d 1139, 1141 [2014]).
The husband has primary custody of the parties' oldest child and the parties share custody of the three younger children on an alternating week schedule. Supreme Court, applying the statutory framework, found that the wife's child support obligation to the husband for the oldest child is $5,100 annually. The court also found that the husband's child support obligation due to the mother is $23,464 annually. The court did not deviate from the guidelines as to either parties' obligations, which the husband argues was error based upon the shared custody arrangement for the three younger children, as well as his agreement to assume sole responsibility for the children's health insurance and unreimbursed health care expenses. We disagree. Initially, it is belied by the record that the husband is solely responsible for the children's unreimbursed health care expenses. In fact, the court ordered that any noncovered health care expenses be shared pro rata, with 75% to be paid by the husband and 25% to be paid by the wife. Moreover, the husband testified at trial that he shared the payment of medical bills with the wife and even conceded that he did not pay some of these bills. As to the shared custody arrangement of the parties, the court did not err in applying the three-step formula under the CSSA, as "'[s]hared custody arrangements do not alter the scope and methodology of [the] CSSA'" (Baraby v Baraby, 250 AD2d 201, 203 [1998], quoting Bast v Rosoff, 91 NY2d 723, 732 [1998]). In cases such as the one present here, where neither parent "can be said to have physical custody of the children for a majority of the time, the parent having the greater pro rata share of the child support obligation, determined after application of the three-step statutory formula of the CSSA, should be identified as the noncustodial parent for the purpose of support regardless of the labels employed by the parties" (Baraby v Baraby, 250 AD2d at 204 [internal quotation marks and citation omitted]). Given that the husband has a much greater income than the wife, he is deemed to be noncustodial parent for child support purposes (see Betts v Betts, 156 AD3d 1355, 1355 [2017]; Ball v Ball, 150 AD3d at 1570). In such circumstances, we discern no error in Supreme Court applying the CSSA formula without any deviation in determining his child support obligation due to the mother.
We turn now to the wife's child support obligation. Initially, contrary to the husband's contention, we do not find that Supreme Court abused its discretion in holding the wife's child support payments to the husband in abeyance until the husband paid, in full, any amounts due to the wife pursuant to the judgment of divorce. The record reveals that the husband expressed hostility regarding his court-ordered obligation to pay the wife maintenance, stating that he would rather go to jail than pay maintenance. Due to this refusal, a large sum of arrears had accrued that resulted in a judgment to the wife for nearly $45,000. Therefore, given the rationale for holding the wife's child support obligation in abeyance, we do not find that Supreme Court abused its discretion (see generally Dembitzer v Rindenow, 35 AD3d 791, 793 [2006]). We do, however, find an error with the amount of child support that the wife was ordered to pay in the event that the husband fulfilled his financial obligations. Specifically, Supreme Court neglected to add the amount of spousal maintenance, $20,800 per year, ordered to be paid to the wife when determining the wife's income for child support purposes (see Domestic Relations Law § 240 [1-b] [b] [5] [iii] [I]; Nichols v Nichols, 19 AD3d 775, 779 [2005]).[FN4] The court determined plaintiff's annual salary, less FICA, to be $30,000. Adding the maintenance obligation of $20,800, the wife's child support obligation should have been based upon an income of $50,800. As such, her presumptive annual child support obligation is 17% of that, which is $8,636 per year or $166 per week. Accordingly, we modify the child support award to the husband to the extent of providing that the wife pay $166 per week to the husband for child support for their oldest child.[FN5]
Lastly, as for its award of counsel fees, Supreme Court conducted a hearing at which the wife's counsel testified to the legal services provided to the wife during the course of these proceedings. Given the widely disparate incomes between the parties, the court did not abuse its discretion in its award of counsel fees to the wife (see Harrington v Harrington, 93 AD3d 1092, 1094 [2012]; O'Connor v O'Connor, 91 AD3d 1107, 1109 [2012]). Additionally, although the billing methods of the wife's counsel were not perfect, they substantially complied with 22 NYCRR 1400.3 (see Harrington v Harrington, 93 AD3d 1092, 1094 [2012]).
Garry, P.J., Egan Jr., Aarons and Colangelo, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by increasing plaintiff's child support obligation to $166 per week, and, as so modified, affirmed.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: This amount represents 40% of $63,000, which is the amount that Supreme Court found to be the total appreciation of the marital residence over the course of the marriage.

Footnote 2: These contentions centered around the husband's payment on a student loan incurred by the wife prior to the marriage, as well as the wife's alleged violation of a court order by liquidating an approximately $2,000 IRA/401(k) and selling a $258 necklace.

Footnote 3: We categorically reject the husband's claim that the wife waived maintenance, as this alleged unwritten and unrecorded waiver is unenforceable because it is does not comply with Domestic Relations Law § 236 (B) (former) (3) (see Matisoff v Dobi, 90 NY2d 127, 134 [1997]; Wetherby v Wetherby, 50 AD3d 1226, 1227 [2008]).

Footnote 4: We are certainly cognizant that Supreme Court may have not included the maintenance award when computing the wife's income because of the husband's refusal to pay maintenance. However, because the wife is not obligated to pay child support to the husband until he is current on his maintenance obligation to her, it was error not to include this when computing her income under the CSSA.

Footnote 5: Because we find no error in Supreme Court holding the mother's child support obligation in abeyance, her payment of child support to the father is contingent upon the satisfaction of his financial obligations to her.