Carter v Fairchild-Carter (2021 NY Slip Op 06594)





Carter v Fairchild-Carter


2021 NY Slip Op 06594


Decided on November 24, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 24, 2021

533414
[*1]James D. Carter, Appellant,
v
Tina L. Fairchild-Carter, Respondent.

Calendar Date:October 12, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Assaf & Siegal, PLLC, Albany (Michael D. Assaf of counsel), for appellant.
Law Offices of MaryAnne Bukolt-Ryder, PLLC, Plattsburgh (MaryAnne Bukolt-Ryder of counsel), for respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Ellis, J.), entered May 14, 2021 in Clinton County, which, among other things, granted defendant's motion for, among other things, temporary maintenance.
This is the third interlocutory appeal in this action (189 AD3d 1360 [2020]; 159 AD3d 1315 [2018]). Following the most recent appeal to this Court, defendant (hereinafter the wife) moved for, among other relief, temporary spousal maintenance and certain fees. Then, in December 2020, the wife filed a supplemental motion seeking temporary maintenance "based upon her updated income" and, again, certain fees. Plaintiff (hereinafter the husband) then moved, in January 2021, for the pretrial classification of certain assets and to set the valuation date of his business assets as the date of trial. In May 2021, the wife moved to extend discovery and adjourn the pending trial. Following submissions by the parties, Supreme Court issued a single order resolving all of the preceding motions. First, after imputing income to the parties, the court ordered the husband to pay the wife $56,439.04 per year in temporary maintenance, as well as $83,808.10 in arrears. The court further ordered the husband to pay certain of the wife's counsel, appraisal and expert fees. The court also adjusted the discovery schedule "to give the parties adequate time to make their cases," and, in line with that rescheduling, the court denied, without prejudice, the husband's cross motion to classify, pretrial, certain assets as separate property and to set the valuation date of his business assets as the date of trial. The husband appeals.[FN1]
We turn first to the husband's contention that Supreme Court erred in denying his motion to classify certain assets pretrial. The husband demonstrated — and the wife does not contest — that any real property purchased and business interests acquired by the husband occurred prior to the parties' marriage, and, thus, is presumed to be separate property (Domestic Relations Law § 236 [B] [1] [d] [1]). The husband also asserts that only one of the parcels was improved during the parties' marriage. Therefore, the husband concludes, any appreciation in value was the result of only passive market forces. The wife, however, retorts that she "was greatly supportive" of the husband both financially and in other ways during the marriage which should be accounted for in the distribution of assets. Although, generally, this Court "encourage[s] a pretrial classification of assets whenever possible" (Antenucci v Antenucci, 193 AD2d 948, 949 [1993]), the husband did not provide any information or documentation related to the current value of the properties or businesses, nor any improvements made thereto beyond his own self-serving statements in his affidavits. Therefore, Supreme Court did not abuse its discretion in denying the husband's cross motion to classify assets as separate property pretrial as "additional discovery [will] place[] the motion court [*2]in a far better position to determine [this] legally dispositive issue" (Gitman v Martinez, 169 AD3d 1283, 1284-1285 [2019] [internal quotation marks and citations omitted]) — namely, what, if any, appreciation in the value of the real property can be considered marital property (see Pace v Pace, 187 AD3d 1443, 1445 [2020]; Allen v Allen, 179 AD3d 1318, 1319-1320 [2020]).
Next, the husband asserts that Supreme Court should have, in its discretion, set the valuation date of his businesses as the date of trial rather than the date of the commencement of the action. "As soon as practicable after a matrimonial action has been commenced, the [trial] court shall set the date or dates the parties shall use for the valuation of each asset" (Domestic Relations Law § 236 [B] [4] [b]). The trial court has broad discretion in selecting valuation dates and may select any date between the date of commencement of the action and the date of trial (see Pace v Pace, 187 AD3d at 1446; Carvalho v Carvalho, 140 AD3d 1544, 1549 [2016]). Notably, "while not dispositive, the fact that the businesses constitute 'active' assets weigh in favor of valuing them as of the date of commencement" (Rich-Wolfe v Wolfe, 83 AD3d 1359, 1360 [2011]; see Bean v Bean, 53 AD3d 718, 720 [2008]).
In support of his cross motion, the husband cites, among other things, the passage of time since commencement of the action, his advancing age and the economic implications of the COVID-19 pandemic as bases for Supreme Court to set the valuation date as the date of trial rather than the commencement of the divorce action. In particular, the husband asserts that he would have "earned nothing" in 2020 if it were not for "the payroll protection program and disaster relief loans" and that this will be true for 2021 as well. Although the court must set forth a valuation date between date of commencement and date of trial, we discern no abuse of discretion with Supreme Court's determination that, at this juncture, setting such a date was not "practicable" (compare Pace v Pace, 187 AD3d at 1446-1447; Carvalho v Carvalho, 140 AD3d at 1549; Williams v Williams, 99 AD3d 1094, 1096 [2012]), particularly given that the proof before the court was limited to the husband's affidavits, tax documents and financial submissions, which the court found "suspect."[FN2]
Finally, the husband claims that Supreme Court erred in imputing income to both him and the wife and calculating temporary maintenance and fees based upon the imputed incomes. "[P]endente lite awards should not ordinarily be modified on appeal unless the ordered payments prevent the payor spouse from meeting his or her own financial obligations or where justice otherwise requires" (Ingersoll v Ingersoll, 86 AD3d 684, 685 [2011] [internal quotation marks and citation omitted]). Thus, this Court has been clear that "the appropriate remedy for an allegedly inequitable temporary award is a speedy trial of the action" (Antenucci v Antenucci, 193 AD2d [*3]at 950; see Rouis v Rouis, 156 AD3d 1198, 1199 [2017]). Nevertheless, when calculating temporary maintenance, "[i]ncome may be imputed based on a party's earning capacity, as long as the court articulates the basis for imputation and the record evidence supports the calculations" (Johnson v Johnson, 172 AD3d 1654, 1656 [2019] [internal quotation marks and citation omitted]; see Matter of Henry v Bell, 185 AD3d 1168, 1170 [2020]).
In support of her motion seeking temporary maintenance and certain fees, the wife provided her 2019 W-2, which set forth that she had made $88,736.91 in wages that year, as well as a letter from her former employer indicating that she had been "released" in November 2019. She also provided an overview of the unemployment benefits that she had received since, demonstrating that she receives $247 per week in benefits. The wife further provided the schedule of the husband's assets that he provided her with prior to entering into the prenuptial agreement, which set forth that the husband had approximately $9,895,000 in assets. In support of the husband's cross motion and in opposition to the wife's motion for temporary maintenance, he supplied, among other things, an updated statement of net worth referencing his 2019 tax returns, as well as his 2019 tax documents, which, notably, did not contain his W-2. The husband's "2019 Return Summary" sets forth that the husband had an adjusted gross income of $100,779 on his federal taxes and $55,329 on his state taxes. Yet, on the husband's "Two-Year Comparison Worksheet," he sets forth that his "[w]ages, salaries[] and tips" for tax year 2019 was $62,754. The husband's assertions regarding the 2020 tax year were similarly inconsistent.
Here, any modification to the amount of the temporary maintenance award should be left for trial; the husband, if at all, only passingly claims that he cannot make such payments (compare Rouis v Rouis, 156 AD3d at 1199; Cheney v Cheney, 86 AD3d 833, 834-835 [2011]). Further, Supreme Court did not abuse its direction in imputing income to the husband, as the record seems to demonstrate that he did not report all of his income, and his gross income was far higher than he maintains in his affidavit (see Seale v Seale, 149 AD3d 1164, 1170 [2017]; Pfister v Pfister, 146 AD3d 1135, 1137 [2017]). That said, the court did not adequately set forth the bases for which it was imputing income of $200,000 to the husband; the court merely noted that it considered the parties' submissions and found the husband's to be "suspect" and, therefore, was imputing $200,000 in income to him for purpose of temporary maintenance (compare Matter of Henry v Bell, 185 AD3d at 1170). In any event, any error in this regard can be corrected with a trial and a complete review of the husband's finances to determine his "actual income during the pendency of the [action]" (Bell-Vesely v Vesely, 180 AD3d 1272, 1273 [2020] [internal quotation marks and citation omitted]). As [*4]to the court's imputation of income to the wife, such was proper as the wife demonstrated that she had lost her job and was receiving unemployment benefits; crediting that the wife was looking for a new position, the court reasonably imputed $17,804.80 to the wife representing the income of a Florida resident making minimum wage. Thus, Supreme Court properly calculated temporary maintenance using these imputed incomes, as well as all associated fees.
We do, however, agree with the husband that Supreme Court erred in ordering him to pay arrears retroactive to the wife's date of unemployment, rather than the date of her application for temporary maintenance. The submissions demonstrated that the wife lost her job and the court made temporary maintenance retroactive to that date, November 26, 2019, yet the wife did not file her motion seeking temporary maintenance until April 2020. As applications for pendente lite relief are to be calculated from the date of the application (see generally Salmon v Lopez de Salmon, 173 AD3d 793, 795 [2019]; Meyer v Meyer, 173 AD2d 1021, 1023 [1991]), the court's calculation of arrears from the date of the wife's unemployment was error. Accordingly, the matter must be remitted for the court to recalculate arrears retroactive to the date of the application for pendente lite relief. The husband's remaining contentions have been examined and have been found to be lacking in merit.
Garry, P.J., Lynch, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as calculated the temporary spousal maintenance arrears retroactive to November 26, 2019; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: This Court denied the husband's motion for a stay pending resolution of this appeal (2021 NY Slip Op 69665[U]).

Footnote 2: To the extent that the husband's arguments may be interpreted as seeking affirmative relief from this Court to set the valuation date as the date of trial, such relief would be improper on the limited record before us.