Rennock v Rennock (2022 NY Slip Op 02213)





Rennock v Rennock


2022 NY Slip Op 02213


Decided on March 31, 2022


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 31, 2022

Before: Gische, J.P., Oing, Scarpulla, Shulman, Higgitt, JJ. 


Index No. 310915/12 Appeal No. 15618 Case No. 2020-04493 

[*1]Gloria Rennock, Plaintiff-Respondent,
v
Michael Rennock, Defendant-Appellant.


Michael J.W. Rennock, appellant pro se.
Jan Levien, P.C., New York (Jan Levien of counsel), for respondent.



Judgment, Supreme Court, New York County (Laura E. Drager, J.), entered January 3, 2020, after trial, insofar as it awarded plaintiff wife, retroactive to August 8, 2012, $2,500/month in spousal maintenance and $2,559/month in child support, and awarded her $162,500 in counsel fees, unanimously affirmed, without costs.
Contrary to defendant husband's contentions, the judgment includes an order enforcing the wife's obligations under the pendente lite order to pay for the family's groceries and other enumerated expenses. In keeping with the Special Referee's report and recommendation, it ordered and adjudged the husband to be reimbursed for, among other things, $8,635 representing the cost of groceries and clothing which, according to the report and recommendation, was the full amount he sought.
The husband's arguments concerning maintenance are unavailing. The amount and duration of maintenance is a matter committed to the sound discretion of the trial court (Spencer v Spencer, 230 AD2d 645, 648 [1st Dept 1996]; Costantino v Costantino, 225 AD2d 651, 652 [2d Dept 1996]), and he does not show that the award to the wife of $2,500/month, with such payments to cease in July 2022, when she will be age 66 and able to receive social security benefits, was an abuse of such discretion. He argues the wife wildly inflated her alleged expenses, but the Special Referee carefully analyzed her claimed expenses and even recognized that some were paid by the husband. He argues the wife did little to find new employment after her job ended in 2017, but the Special Referee was well aware that she was not engaging in a full-time search for employment, recognized that she was able to obtain new employment, and imputed income to her. He argues the wife upgraded her lifestyle post-separation and created the false impression of an affluent marital lifestyle, but the Special Referee recognized this was not so. He argues the award fails to take into account the sizeable funds the wife received in equitable distribution, but the trial court's September 6, 2019 order, which confirmed in part and modified in part the Special Referee's report and recommendation, expressly refers to and takes into account the wife's distributive award. We have considered and reject the husband's remaining arguments concerning maintenance.
As to child support, the Special Referee's reliance on the husband's 2014 income, and the inclusion of capital gains in assessing that year's income for CSSA purposes, was a provident exercise of discretion (see e.g. Marlinksi v Marlinski, 111 AD3d 1268 [4th Dept 1993]). The Special Referee, contrary to the husband's assertions, canvassed his income from other years and, as its summary of such income shows, the 2014 income was not the anomaly he claims it to be. Nor does he show reason to revisit the inclusion of capital gains in the income calculation (see Marlinski at 1270-1271; McFarland v McFarland, 221 AD2d 983, 984 [4th Dept 1995]). He contends such [*2]gains were "extraordinary," having been earned only in 2014 and 2012. However, he does not adequately address the Special Referee's point, reiterated by the trial court, that his argument was contravened by his own testimony of having regularly traded, even before commencement, in the Schwab account in which these gains were realized. Nor does he cite authority for his apparent claim that in order to constitute "recurring" income, his capital gains in each year would have had to equal the approximately $150,000 in gains he reaped in 2014.
The husband's other arguments concerning child support are premature or otherwise unavailing. He claims the judgment should reflect that his child support obligation will be reduced by 50% upon emancipation of the older child, but pursuant to Domestic Relations Law § 240 (1-b)(b)(3), his basic child support obligation should be reduced not by half, but from his pro rata share of 25% of combined parental income to his pro rata share of 17% of combined parental income (see also Azizo v Azizo, 51 AD3d 438, 440 [1st Dept 2008]). He argues the judgment failed to adjust his obligation to account for the college room and board expenses he will incur, but the extent to which he will bear such expenses has not yet been determined. The Special Referee noted that neither party addressed payment of such expenses and only determined, as the judgment also reflects, that their 529 accounts should be used towards payment of such expenses. Moreover, the extent to which a credit for room and board expenses is issued against child support depends upon the facts and circumstances of each case (Matter of Deborah R. v Dean E.H., 181 AD3d 447, 448 [1st Dept 2020]).
We affirm the $162,500 counsel fee award (Domestic Relations Law § 237). The husband claims the wife and her counsel drove up litigation costs, but the Special Referee and the court found both parties caused delays and took intransigent positions that prevented settlement. Further, such award is not based solely on litigation conduct; the paramount factor is financial need (Kesavan v Kesavan, 162 AD3d 445, 446 [1st Dept 2018]; Roddy v Roddy, 161 AD3d 441 [1st Dept 2018]), a factor whose application here the husband shows no reason to revisit.
We have considered the parties' remaining arguments and find them unavailing.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: March 31, 2022