Angello v Angello (2025 NY Slip Op 02105)

Angello v Angello

2025 NY Slip Op 02105

Decided on April 10, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 10, 2025

534047
[*1]Joseph Angello, Respondent,
v
Lilia Angello, Appellant.

Calendar Date:February 19, 2025

Before:Egan Jr., J.P., Aarons, Pritzker, Lynch and Ceresia, JJ.

Mack & Associates, PLLC, Albany (Barrett D. Mack of counsel), for appellant.
Salazar and Erikson, LLP, East Greenbush (Dana L. Salazar of counsel), for respondent.

Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Margaret Walsh, J.), entered August 25, 2021 in Columbia County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 1989 and have one adult child. The husband commenced this divorce action in 2016 upon the ground of irretrievable breakdown in the marriage, prompting the wife to answer and counterclaim for divorce on several other grounds. By the time that the nonjury trial began in 2019, grounds were not contested and the focus was upon issues of equitable distribution and maintenance. The marital property at issue included a local, organic grocery distribution business primarily operated by the husband, which had incurred significant debt and had ceased operations by the time of trial, a warehouse associated with that business, and the marital residence. At the conclusion of the trial, the parties each moved for an award of counsel fees.
Supreme Court thereafter issued findings of fact and conclusions of law in which it found that the wife had wastefully dissipated marital assets by refusing to agree to a 2018 arrangement in which one of the marital business' competitors would have acquired the business and its customer list, assumed responsibility for $900,000 in business debt and hired its staff. Supreme Court valued the business as of the date of trial and directed that the wife be responsible for half of its $995,000 in debt, further directing that the warehouse be sold and that the sale proceeds be applied first to the debts secured by liens on the warehouse and then to the remaining business debt. Supreme Court also directed that the marital residence be sold and that the net proceeds be equally divided between the parties after adjustment to reflect temporary maintenance and counsel fee arrearages owed by the husband. The court calculated the presumptive amount of maintenance to which the wife was entitled as $914 a month, but determined that a downward deviation was warranted and directed that the husband pay $305 a month for a period of five years. The court further directed the wife to pay the husband $20,000 in counsel fees out of her share of the proceeds from the sale of the marital residence, finding that, while the husband was the more monied spouse, he had already incurred significant legal fees on the wife's behalf and she, in turn, had "refus[ed] to settle the matter on any terms" and behaved in a manner that severely impacted the parties' assets. The wife appeals.
Turning first to the issue of equitable distribution, the wife primarily complains about the valuation of the marital business and the equal allocation of its debt between the parties. In that regard, the husband testified that the business began experiencing financial problems in the early 2010s due to increased competition and that it eventually became apparent that [*2]the business could no longer turn a profit. The husband testified that his efforts to find a way out of this worsening situation led to a 2018 offer from one of the business' competitors to acquire it and assume most of its debt. The wife refused to agree to the offer despite the fact that her own legal advisor — whose fees for reviewing the offer were paid for by the husband and whose testimony at trial regarding the state of the business was largely consistent with that of the husband — was unaware of any other potential purchasers and was satisfied that the only viable options for the business were "a sale or . . . bankruptcy." Thereafter, efforts to find other purchasers failed and the husband had no choice but to cease operations, leaving behind the warehouse and $995,000 in debt. Supreme Court credited the husband's account of events as to how the business failed over what amounted to suspicion on the wife's part that there must be more to the story, and we defer to that determination given "the court's superior opportunity to assess the credibility of the witnesses" (Arthur v Arthur, 148 AD3d 1254, 1255 [3d Dept 2019] [internal quotation marks and citation omitted]).
With those findings in mind, while active marital assets like a going business are ordinarily valued as of the date a divorce action is commenced, Supreme Court "has broad discretion to select an appropriate date for measuring the value of the property" between commencement and the date of trial (Mesholam v Mesholam, 11 NY3d 24, 28 [2008] [internal quotation marks, brackets and citation omitted]; see Domestic Relations Law § 236 [B] [4] [b]; Carter v Fairchild-Carter, 199 AD3d 1291, 1293 [3d Dept 2021]). As the credible proof here reflected that the business had ceased operations during the pendency of this action due to legitimate financial problems that were not attributable to the husband and were not going to improve, Supreme Court did not abuse its discretion in valuing the business as of the date of trial (compare Giallo-Uvino v Uvino, 165 AD3d 894, 895-896 [2d Dept 2018], with Rich-Wolfe v Wolfe, 83 AD3d 1359, 1360 [3d Dept 2011]). Moreover, as the proof also reflected that the wife's refusal to agree to the 2018 offer to sell the business was unreasonable, Supreme Court properly determined that she had wastefully dissipated marital assets and took that fact into account in distributing an equal share of the business debt to her (see Burnett v Burnett, 101 AD3d 1417, 1419 [3d Dept 2012]; Southwick v Southwick, 202 AD2d 996, 997 [4th Dept 1994], lv dismissed 83 NY2d 1000 [1994]).
The wife's remaining challenges to the distributive award are no more persuasive. The parties are in serious financial trouble because of her refusal to agree to the 2018 offer, and their other assets, which were also depleted to some degree due to the prolonged litigation in this matter, cannot cover their debts. A sale of the two major assets remaining in the marital estate — a warehouse used [*3]in the business that a realtor testified should have an asking price of $595,000 and a marital residence that was assessed for tax purposes at $224,731 — would be the only way to generate funds to put a significant dent in that debt and provide some much-needed cash to the parties. Supreme Court accordingly directed that the warehouse be sold and the proceeds be first used to satisfy the debts secured by liens on that property, then applied to the remaining debt. The marital residence, in turn, was to be sold and the net proceeds divided between the parties with an adjustment to reflect arrearages on various payments that the husband had been ordered to make to the wife during the pendency of this action. The wife now suggests that these directives were inappropriate and that she should have been awarded exclusive ownership and occupancy of the marital residence in particular. Our review of the record, however, gives no reason to believe that Supreme Court abused its discretion in making either directive in view of both the parties' overall financial situation and the lack of any indication that the wife could afford to compensate the husband for his share in the residence and then maintain it (see Allen v Allen, 179 AD3d 1318, 1320 [3d Dept 2020]; Sprole v Sprole, 145 AD3d 1367, 1371-1372 [3d Dept 2016]). Taken as a whole, in short, "Supreme Court took into account all of the necessary factors and, as such, we defer to the court's findings of fact and credibility and affirm this distributive award" (Allen v Allen, 179 AD3d at 1320; see Domestic Relations Law § 236 [B] [5]).
Turning to the award of durational maintenance, the husband was earning approximately $74,000 a year from the marital business when it became insolvent, but was only earning $50,000 a year working for a grocery distributor by the time of trial.[FN1] He testified that he could theoretically increase that income with sales commissions, but did not expect that to happen because he owed money to many of the vendors in the wake of the marital business' closure and those vendors refused to do business with him. Moreover, the husband could well lose his job if the federal license he needed to perform it was revoked as a result of the debts he owed to those vendors (see 7 USC §§ 499b, 499c [a]; 499f). Supreme Court accordingly declined to impute additional income to the husband and calculated maintenance based upon his actual income of $50,000 a year. Supreme Court further found that, as the unemployed wife was a licensed massage therapist and had demonstrated a variety of employable skills in the course of her work for the marital business, income of $12,500 a year should be imputed to her. Under the circumstances, Supreme Court was well within its discretion to make both findings (see Bailey v Bailey, 232 AD3d 574, 576 [2d Dept 2024]; Smith v Smith, 116 AD3d 1139, 1140 [3d Dept 2014]).
Supreme Court went on to determine that, while application of the statutory guidelines to those figures [*4]would result in the wife receiving $914.17 a month in maintenance for between 9½ and 13 years, a consideration of the factors set forth in Domestic Relations Law § 236 (B) (6) (e) reflected that a downward deviation to $305 a month for a period of five years was warranted. The court noted, in particular, the wife's wasteful dissipation of marital assets that had financially harmed both parties, the role her actions had played in harming the husband's earning capacity, the lack of any indication that she required additional education or training to find work, and her eligibility for Social Security benefits and Medicare. We defer to Supreme Court's credibility assessments and find that it adequately detailed how, in its view, the statutory factors justified a downward deviation (see Breen v Breen, 222 AD3d 1202, 1204-1205 [3d Dept 2023]). Nevertheless, we find that a lesser downward deviation "is warranted based upon our review of the record" and direct that the husband pay maintenance to the wife in the amount of $500 a month for a period of five years (Stricos v Stricos, 263 AD2d 659, 660 [3d Dept 1999]).
Finally, while Supreme Court properly rejected the wife's effort to obtain counsel fees from the husband, we do agree with her that Supreme Court abused its discretion in ordering her to pay counsel fees to the husband. Pursuant to Domestic Relations Law § 237 (a), Supreme Court was authorized to "direct either spouse . . . to pay counsel fees and fees and expenses of experts directly to the attorney of the other spouse to enable the other party to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties" (see DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]). "This is a dramatic departure from the American rule that usually requires litigants to pay their own legal expenses," and it has long been held that the statute was designed " 'to redress the economic disparity between the monied spouse and the non-monied spouse' and ensure that 'the matrimonial scales of justice are not unbalanced by the weight of the wealthier litigant's wallet' " (Frankel v Frankel, 2 NY3d 601, 606-607 [2004], quoting O'Shea v O'Shea, 93 NY2d 187, 190 [1999]; see Mohamed v Abuhamra, 222 AD3d 1344, 1347-1348 [4th Dept 2023]). Indeed, that intent has become even clearer over time, as the Legislature amended Domestic Relations Law § 237 in 2010 to provide "a rebuttable presumption that counsel fees shall be awarded to the less monied spouse" (Domestic Relations Law § 237 [a], as amended by L 2010, ch 329, § 1). An award of counsel fees pursuant to Domestic Relations Law § 237 is accordingly unjustified where financial need is not the primary driver, such as where the party seeking counsel fees is better off financially than the nonmoving party or where the parties "are similarly situated financially and [the moving party] has failed to establish any financial [*5]inability to pay [his or] her own counsel fees" (Rough v Kandell, 135 AD2d 700, 702 [2d Dept 1987]; see Rennock v Rennock, 203 AD3d 675, 676-677 [1st Dept 2022]; Button v Button, 165 AD3d 1528, 1534 [3d Dept 2018]). There is no dispute here that the husband is in a better financial position than the wife, and his motion for counsel fees was based upon the wife's allegedly obstructive conduct during litigation as opposed to any difficulty on his part in covering his counsel fees. Supreme Court abused its discretion in granting the husband's motion for counsel fees under these circumstances (see Mohamed v Abuhamra, 222 AD3d at 1347-1348; Matter of William T.M. v Lisa A.P., 39 AD3d 1172,1173 [4th Dept 2007]).
To the extent that the wife's contentions are not addressed above, they have been considered and found to be unavailing.
Aarons, Pritzker, Lynch and Ceresia, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded defendant spousal maintenance in the amount of $305 a month for a period of five years and directed defendant to pay $20,000 of plaintiff's counsel fees; plaintiff is directed to pay spousal maintenance to defendant in the amount of $500 per month for a period of five years; and, as so modified, affirmed.

Footnotes

Footnote 1: The husband was working for the competitor that had offered to buy the marital business in 2018, but the record gives no reason to believe that he could have earned more elsewhere.