■ OVILA L. BIBEAU, Respondent, v LYDIA M. SUDICK, Appellant. [996 NYS2d 635]—

In an action for a divorce and ancillary relief, the defendant appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Orange County (Onofry, J.), entered January 24, 2013, as, upon an order of the same court dated May 21, 2012, inter alia, denying her cross motion for summary judgment on her counterclaim to set aside a premarital agreement between the parties as void, invalid, and unenforceable and granting those branches of the plaintiff's separate cross motion which were for summary judgment determining that the premarital agreement is valid and enforceable and dismissing that counterclaim, and upon an order of the same court dated October 15, 2012, granting that branch of the plaintiff's separate motion which was for summary judgment on the cause of action alleging an irretrievable breakdown of the marital relationship pursuant to Domestic Relations Law § 170 (7), incorporated the premarital agreement, awarded her a lump sum in lieu of maintenance, support, and equitable distribution in accordance with the premarital agreement, and is in favor of the plaintiff and against her dismissing that counterclaim.

Ordered that the judgment is reversed insofar as appealed from, on the law, with costs, those branches of the plaintiff's cross motion which were for summary judgment determining that the premarital agreement is valid and enforceable and dismissing the defendant's counterclaim to set aside the premarital agreement as void, invalid, and unenforceable are denied, that counterclaim is reinstated, the order dated May 21, 2012, is modified accordingly, and the matter is remitted to the Supreme Court, Orange County, for further proceedings in accordance herewith.

On September 28, 2000, the plaintiff and the defendant executed a premarital agreement which provided, at Paragraph Five thereof, that in the event of a divorce, the defendant would receive, in lieu of maintenance, support, and equitable distribution, the sum of $25,000 for each year of the marriage. The par-

ties also agreed to waive their interest in the elective share of each other's estate, and to make no claim to property titled in the other's name. According to financial statements attached to the premarital agreement, the plaintiff, then 70 years of age, had assets of more than $10,000,000, while the defendant, then 38 years of age, had assets of approximately $170,000. The agreement was signed in the office of the plaintiff's attorney, in the presence of another attorney who was purportedly representing the defendant. The parties were married on September 30, 2000, two days after the premarital agreement was executed. There are no children of the marriage.

At the time of the marriage, the defendant, who had a background in marketing works of fine art to corporations, had recently opened an art gallery in California. She closed this business and relocated to Pine Bush, New York, in order to reside with the plaintiff in preparation for their marriage, and assist him in his business endeavors. These included real estate development, as well as breeding thoroughbred horses and managing polo ponies.

In October 2010, the plaintiff commenced this action for a divorce pursuant to Domestic Relations Law § 170 (7), attesting to the irretrievable breakdown of the marriage, and submitting the premarital agreement as proof that all economic issues had been resolved. The defendant cross-moved for summary judgment on her counterclaim to set aside the premarital agreement as void, invalid, and unenforceable. The plaintiff separately cross-moved for summary judgment determining that the premarital agreement was valid and enforceable, and dismissing the defendant's counterclaim alleging the converse.

In support of her cross motion, and in opposition to the plaintiff's separate cross motion, the defendant offered proof that she signed the premarital agreement without benefit of counsel, that she was presented with the agreement immediately prior to signing it without discussion or negotiation of its terms, and that she was pressured to sign the agreement by being told that, if she did not, the plaintiff would cancel the impending wedding, scheduled to take place two days later. Specifically, the defendant offered proof in the form of the transcript of the deposition testimony of the attorney who purportedly represented her in connection with the negotiation and execution of the premarital agreement. This attorney was unable to produce a retainer or letter of engagement, and had no recollection of the circumstances in which he was hired to represent the defendant. Although he produced a note in his file which, in abbreviated form, could be said to refer to a conversation with the de-

fendant about several terms of the premarital agreement, the attorney had no independent recollection of meeting with the defendant prior to the date of the signing of the premarital agreement. Moreover, he had no recollection as to whether he explained to her the terms of the premarital agreement or her rights pursuant to the laws regarding spousal support, equitable distribution, and the election of a minimum share of a deceased spouse's estate. In addition, the defendant argued that the financial schedules prepared by the parties demonstrated such a financial disparity between them that the provision in the premarital agreement that she receive a relatively small sum in lieu of her rights to maintenance, equitable distribution, or, if the plaintiff predeceased her, an elective share of the plaintiff's estate, without a corresponding benefit, was manifestly unfair and unconscionable. The defendant further contended that, according to the terms of the premarital agreement, each party was to retain property titled in his or her name, which meant that, although she closed her fine arts marketing business, and assisted in the plaintiff's real estate development business, she was unduly pressured into agreeing to receive no compensation for her contributions.

In opposition to the defendant's cross motion, and in support of his own separate cross motion, the plaintiff submitted the financial statements prepared by the parties some 10 days prior to the signing of the premarital agreement, arguing that this constituted evidence that the defendant knew, or should have known, that she was expected to sign the agreement prior to the wedding, and could not claim surprise or overreaching in connection with the monetary and property distribution provisions of the premarital agreement.

The Supreme Court denied the defendant's cross motion, and granted those branches of the plaintiff's separate cross motion which were to determine that the agreement was valid and enforceable and dismissing the defendant's counterclaim alleging the converse. The court subsequently granted that branch of the plaintiff's subsequent motion which was for summary judgment on the cause of action alleging an irretrievable breakdown of the marital relationship, and entered a judgment of divorce. The defendant appeals, as limited by her brief, from the provisions of the judgment of divorce providing for the distribution of marital assets and awarding her money pursuant to the terms of the premarital agreement.

An agreement between spouses or prospective spouses should be closely scrutinized, and may be set aside upon a showing that it is unconscionable, or the result of fraud, or where it is

shown to be manifestly unfair to one spouse because of over-reaching on the part of the other spouse (*see Christian v Christian*, 42 NY2d 63, 72-73 [1977]; *Matter of Fizzinoglia*, 118 AD3d 994, 995 [2014], *lv granted* 24 NY3d 908 [2014]; *Thantu v Laifook*, 110 AD3d 983, 984 [2013]; *Pippis v Pippis*, 69 AD3d 824, 825 [2010]). Such an agreement may be invalidated if the party challenging the agreement demonstrates that it was the product of fraud, duress, or other inequitable conduct (*see Christian v Christian*, 42 NY2d at 73; *Cioffi-Petrakis v Petrakis*, 103 AD3d 766, 767 [2013]; *Petracca v Petracca*, 101 AD3d 695, 699 [2012]; *Leighton v Leighton*, 46 AD3d 264, 265 [2007]).

There is evidence that the defendant was not represented by independent counsel in connection with the preparation and execution of the allegedly "take-it-or-leave-it" premarital agreement that is the subject of this appeal. In addition, contrary to the plaintiff's contention, the preprinted financial forms executed by the parties do not demonstrate that they were expecting to enter into a premarital agreement, as the forms recite that they were furnished by a commercial bank in connection with an application for a mortgage. The defendant therefore raised triable issues of fact as to whether the premarital agreement was the product of overreaching, such that it would be rendered unenforceable (*see Petracca v Petracca*, 101 AD3d at 699; *Pippis v Pippis*, 69 AD3d at 825; *Leighton v Leighton*, 46 AD3d at 265).

Accordingly, the Supreme Court should have denied that branch of the plaintiff's cross motion which was for summary judgment determining that the premarital agreement was valid and enforceable and dismissing the defendant's counterclaim alleging the converse. We, thus, remit the matter to the Supreme Court, Orange County, for a hearing and a determination thereafter on the validity of the premarital agreement, for further resolution of any economic issues, if necessary, and the entry an appropriate amended judgment of divorce thereafter. Dillon, J.P., Dickerson, Cohen and Duffy, JJ., concur.