Spiegel v Spiegel (2022 NY Slip Op 03778)

Spiegel v Spiegel

2022 NY Slip Op 03778

Decided on June 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 9, 2022

532401 534512
[*1]Casey J. Spiegel, Respondent,
v
Jessica A. Spiegel, Appellant.

Calendar Date:April 21, 2022

Before:Garry, P.J., Lynch, Colangelo and McShan, JJ.

Bartlett, Pontiff, Stewart & Rhodes, PC, Glens Falls (Mark E. Cerasano of counsel), for appellant.
Assaf & Siegal, PLLC, Albany (Michael Assaf of counsel), for respondent.

McShan, J.
Appeals (1) from an order of the Supreme Court (Bruno, J.), entered November 16, 2020 in Clinton County, which, among other things, partially granted plaintiff's motion for summary judgment, and (2) from a judgment of said court, entered December 3, 2021 in Clinton County, granting, among other things, plaintiff a divorce, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in February 2011 after a lengthy period of cohabitation beginning in 2001. The parties have four children together (born in 2007, 2009, 2010 and 2017). Two days before they were married, the parties executed a prenuptial agreement (hereinafter the agreement) in which the wife, among other things, accepted an agreed-upon maintenance provision. In June 2019, the husband commenced an action for divorce alleging an irretrievable breakdown of the parties' relationship. The wife answered and asserted two counterclaims, seeking an award of maintenance and a judgment setting aside the agreement as invalid. Thereafter, the husband moved for summary judgment requesting, among other things, that Supreme Court deem the agreement valid and dismiss the wife's counterclaims. The wife opposed the husband's motion and cross-moved for an award of temporary maintenance and counsel fees. Supreme Court, among other things, partially granted the husband's motion, dismissed the wife's second counterclaim disputing the validity of the agreement and denied her cross motion seeking temporary maintenance. The court subsequently granted the husband a judgment of divorce, incorporating its order partially granting summary judgment to the husband. These appeals ensued.[FN1]
The wife argues that the husband's motion for summary judgment should have been denied because the agreement is the product of overreaching and should be set aside. While the public policy of this state affords presumptive validity to prenuptial agreements, such agreements "between spouses should be closely scrutinized" (Carter v Fairchild-Carter, 187 AD3d 1360, 1362 [2020]; see Smith v Smith, 129 AD3d 934, 934-935 [2015]; Kessler v Kessler, 33 AD3d 42, 46 [2006], lv dismissed 8 NY3d 968 [2007]). Indeed, "[d]espite the presumption of validity, an agreement between prospective spouses can be set aside where it is shown to be the product of fraud, duress, overreaching resulting in manifest unfairness, or other inequitable conduct" (Gottlieb v Gottlieb, 138 AD3d 30, 36 [2016], lv dismissed 27 NY3d 1125 [2016]; see Matter of Fizzinoglia, 26 NY3d 1031, 1032 [2015]). Conduct establishing that a party overreached must be evident "'in the execution [of the agreement], such as the concealment of facts, misrepresentation, cunning, cheating, sharp practice, or some other form of deception'" (Marinakis v Marinakis, 196 AD3d 472, 474 [2021], quoting Gottlieb v Gottlieb, 138 AD3d at 37; see Stawski v Stawski, 43 AD3d 776, 777 [2007]). "The burden of producing evidence of such [*2]fraud, duress or overreaching is on the party asserting the invalidity of the agreement" (Anonymous v Anonymous, 123 AD3d 581, 582 [2014] [citations omitted]; see Cioffi-Petrakis v Petrakis, 103 AD3d 766, 767-768 [2013], lv denied 21 NY3d 860 [2013]). "A motion for summary judgment should not be granted where the facts are in dispute, where conflicting inferences may be drawn from the evidence, or where there are issues of credibility" (McKenna v McKenna, 121 AD3d 864, 865 [2014] [internal quotation marks and citation omitted]; accord Gardella v Remizov, 144 AD3d 977, 979 [2016]).
We find that the husband met his initial burden to demonstrate entitlement to summary judgment. The husband submitted the agreement, which contained various representations that the parties entered into the agreement knowingly and intelligently and with the benefit of counsel (see Carter v Fairchild-Carter, 159 AD3d 1315, 1316 [2018]; McKenna v McKenna, 121 AD3d at 866). However, viewing the evidence in the light most favorable to the wife, as we must, we find that there are various issues of fact raised by the circumstances surrounding the execution of the agreement that preclude an award of summary judgment (see Carter v Fairchild-Carter, 159 AD3d at 1316; Leighton v Leighton, 46 AD3d 264, 265 [2007], appeal dismissed 10 NY3d 739 [2008]).
The record reveals that prior to the marriage there was a pronounced financial disparity between the husband and the wife, who had no assets at the time of the marriage and was previously employed by the state. After cohabitating for approximately 10 years, the parties decided to get married and, at the husband's insistence, resolved to enter into a prenuptial agreement. The husband was referred to his counsel by a family attorney and, during the process of retaining his counsel, sought a recommendation on representation for the wife. However, according to the wife, she had no discussion or input on counsel of her choice, and simply was forwarded a retainer agreement and statement of client rights from her counsel's office, which she was unable to open and never executed. After consulting with his counsel over several days, the husband approved an initial draft of the agreement, which was forwarded to the wife's counsel on January 27, 2011. Thereafter, negotiations on the agreement between counsel began in earnest on February 1, 2011 and continued over a three-day period. The parties executed a final version of the agreement on February 4, 2011, two days before they were married.
The wife stated that she did not receive an initial draft of the agreement prior to consulting with counsel. Further, while the wife conceded that she had a single conversation with her counsel that lasted between 30 and 45 minutes, the record fails to definitively establish that she had any further meaningful discussions with counsel during the ensuing negotiations. After that discussion, the wife's counsel sent several proposed changes concerning [*3]the agreement to the husband's counsel. The record demonstrates that, after receiving an email from his counsel concerning the proposed changes, the husband responded to his counsel that he understood the role of the wife's counsel as one in which he would merely explain the terms of the proposed agreement, rather than serve as her representative in a negotiation on its terms. Specifically, the husband stated that he had hired the wife's counsel "to make sure [that the wife] fully understands the agreement," and not "to create friction," "re-write the agreement" or "dig into issues he does not know about." The husband also provided a list of various circumstances that the wife's counsel did not understand and stated that he would not provide the wife's counsel with a detailed list of his bank accounts because he was out of town and that the wife was already familiar with his finances. The wife, however, sharply disputed the husband's representation, claiming that she had little knowledge of the extent of the husband's finances beyond some basic knowledge as to certain businesses he operated. The wife also averred that she and the husband had minimal discussions pertaining to the agreement beyond his bare statements that a prenuptial agreement was necessary to protect his business interests. To this point, the wife claimed that the husband told her on various occasions that without the agreement, there would be no wedding. The wife also represented that, during the negotiations, the husband told her that the agreement was as fair as it was going to get, and that she should just sign it and not focus on every detail. The wife further stated that the husband provided various reassurances that he would always take care of her and that the agreement was "no big deal."
On the last day of negotiations between counsel, the wife averred that she was preparing to travel to Florida with the parties' children. While the communications submitted by the husband in support of his motion indicate that counsel for the parties continued discussing potential changes to the agreement, there is conflicting evidence establishing the extent that the wife was meaningfully involved in those discussions. The wife further averred that the first opportunity she had to review the agreement was in Florida, at which point it was already in its final form. We find that the foregoing facts, if established, raise issues concerning whether the wife was meaningfully represented during the abbreviated negotiations, and also raise an inference that the husband did not intend on engaging in a good faith negotiation of the agreement from the outset, which, if true, would be sufficient to establish overreaching on his part (see Carter v Fairchild-Carter, 159 AD3d at 1316-1317; Lombardi v Lombardi, 127 AD3d 1038, 1041-1042 [2015]; Bibeau v Sudick, 122 AD3d 652, 655 [2014]; McKenna v McKenna, 121 AD3d at 866; Leighton v Leighton, 46 AD3d at 265). Accordingly, we find that Supreme [*4]Court improperly granted the husband's motion.
We further reject the husband's contention that the wife ratified the agreement and is therefore foreclosed from challenging its validity. The authority cited by the husband contending that the wife ratified the agreement pertains solely to separation agreements (see e.g. Kessler v Kessler, 89 AD3d 687, 688 [2011]; Cosh v Cosh, 45 AD3d 798, 800 [2007]; Towner v Towner, 225 AD2d 614, 615 [1996]; Torsiello v Torsiello, 188 AD2d 523, 524 [1992]) and is inapposite to the circumstances presented in this matter. Here, the record reveals that the wife had only received maintenance pursuant to the agreement for a four-month period before filing her answer disputing the validity of the agreement. Further, although the wife is entitled to the marital portion of the husband's contributions to deferred compensation, it cannot be said that she has realized this benefit in such a way as to support a finding of ratification. Altogether, it is clear that the wife did not begin receiving benefits under the agreement until the husband commenced this divorce action, and she took sufficiently prompt action to challenge the validity of the agreement in the context of this litigation (compare Kuznetsov v Kuznetsova, 127 AD3d 1031, 1032 [2015]; Cotton v Cotton, 76 AD3d 1041, 1042 [2010]; Mahan v Mahan, 29 AD3d 471, 472 [2006]).
Finally, we find that Supreme Court improperly denied the wife's cross motion for temporary maintenance. To this end, the wife argues that the maintenance provision of the agreement must be invalidated for failing to comply with the requirements of Domestic Relations Law former § 236 (B) (5-a) (f). We agree. At the time that the parties entered into the agreement, Domestic Relations Law former § 236 (B) (5-a) (f) required that any agreement concerning temporary maintenance in which the parties deviated from the presumptive award must include language advising the parties of the amount of that award and further include the reasons that the parties had deviated from the payment of that amount (see Domestic Relations Law former § 236 [B] [5-a] [f]). Notably, the language used in Domestic Relations Law former § 236 (B) (5-a) (f) is "virtually identical" to similar provisions governing agreements for child support (Anonymous v Anonymous, 142 AD3d 187, 191 [2016]) and, in those cases, the failure to include the "'statutory catechisms'" renders the support provision invalid (Spooner v Spooner, 154 AD3d 1158, 1160 [2017], quoting Matter of Usenza v Swift, 52 AD3d 876, 878 [2008]; see Matter of Michael J.F. v Jennifer M.B., 192 AD3d 556, 557 [2021]). Here, the parties clearly deviated from the presumptive award of temporary maintenance, and the maintenance provision in the agreement failed to provide a calculation of the presumptive award or any reasoning for deviating from same at a time when Domestic Relations Law former § 236 (B) (5-a) (f) required such language (see Anonymous v Anonymous, 142 [*5]AD3d at 192; compare Anonymous v Anonymous, 137 AD3d 583, 584 [2016]). Moreover, because the calculation in the agreement is intended to substitute for any potential maintenance award, "both temporary and permanent," the entirety of the provision must be vacated (see Cummins v Lune, 151 AD3d 1258, 1260 [2017]; Bushlow v Bushlow, 89 AD3d 663, 664 [2011]; see also Anonymous v Anonymous, 142 AD3d at 192). In so concluding, we note that the agreement contains a severability clause, which would render the remainder of the agreement enforceable (see Christian v Christian, 42 NY2d 63, 73 [1977]; Cummins v Lune, 151 AD3d at 1260).[FN2] Finally, because Supreme Court did not reach the issue of maintenance as part of its determination and the record does not contain a recent financial disclosure from the husband, we remit the matter to Supreme Court to calculate an appropriate maintenance award (see Cummins v Lune, 151 AD3d at 1260-1261; see also Carter v Fairchild-Carter, 199 AD3d 1291, 1295 [2021]; Kaufman v Kaufman, 131 AD3d 939, 944 [2015]).
Garry, P.J., Lynch and Colangelo, JJ., concur.
ORDERED that the appeal from the order is dismissed, without costs.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as (1) granted that portion of plaintiff's motion for summary judgment seeking a determination that the prenuptial agreement between the parties is valid and dismissal of defendant's second counterclaim, and (2) denied defendant's cross motion for temporary maintenance; motion denied and cross motion granted to that extent; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The entry of the judgment of divorce forecloses the wife's appeal of the November 2020 intermediate order, and that appeal is therefore dismissed (see Hassan v Barakat, 171 AD3d 1371, 1373 n 1 [2019]). Nonetheless, the issues raised with respect to that order are properly raised in the appeal of the December 2021 judgment (see CPLR 5501 [a] [1]; Ramadan v Ramadan, 195 AD3d 1174, 1175 n 1 [2021]).

Footnote 2: To the extent that the wife contends that the maintenance provision is unconscionable, her argument is rendered academic in light of our decision.