N.E.S. v C.M.S. (2026 NY Slip Op 50093(U))

[*1]

N.E.S. v C.M.S.

2026 NY Slip Op 50093(U)

Decided on February 15, 2026

Supreme Court, Kings County

Sunshine, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 15, 2026
Supreme Court, Kings County

N.E.S., Plaintiff,

againstC.M.S., Defendant.

Index No. REDACTED

Neuhaus & Yacoob, LLCAttorney for PlaintiffBy: Joel N. Yacoob, Esq.195 Montague Street, 14th Fl.Brooklyn, New York 11201Law Offices of Wendy Sonneborn, Esq.Attorney for DefendantBy: Wendy Sonneborn, Esq.123-35 82nd RoadKew Gardens, New York

Jeffrey S. Sunshine, J.

FactsThe parties were married on October 5, 1999 in a religious ceremony [NYSCEF #18, p. 1]. The plaintiff-husband is fifty (50) years old. The defendant-wife is forty-eight (48) years old. Three (3) children were born of the marriage. Two of the children of the marriage are emancipated. There is one (1) child of the marriage entitled to child support who is eighteen [*2](18) years old [born May 2007].
Plaintiff-husband through counsel commenced this action on January 15, 2025 by filing a summons with notice [NYSCEF #1]. A preliminary conference was scheduled for February 25, 2025 [NYSCEF #5]; however, plaintiff's counsel, on notice to defendant who was self-represented at the time, submitted correspondence dated February 17, 2025, requesting an adjournment on consent of defendant and representing that the parties were executing a global stipulation of settlement [NYSCEF #7]. Based on that joint adjournment request and the representation, the Court adjourned the preliminary conference to March 17, 2025 [NYSCEF #10]. 
Plaintiff's counsel uploaded an Agreement signed by the parties to NYSCEF and, on March 17, 2025, the parties appeared and requested that the Court conduct an inquest on grounds and an allocution on this First Agreement (herein referred to as the "First Agreement") which the Court had not received notice had been filed (NYSCEF #30; transcript of March 17, 2025 court appearance). The defendant-wife appeared self-represented at that appearance. The Court extensively allocuted the defendant as to the role of plaintiff's counsel and that he represented only the plaintiff and "certainly not you" [NYSCEF #30, p. 2]. The Court also allocuted the defendant on her right to be represented by an attorney of her own choosing and that the Court would grant her an adjournment to consult with an attorney if she requested an adjournment to do so [NYSCEF #30, p. 2-3]. On the record, the Court provided the defendant with a list of local bar association referral panels, copies of the required Maintenance Guidelines Notice and the Child Support Standards Act chart, as well as information about the Office of the Self-Represented and the resources available at www.nycourts.gov [NYSCEF #30, p. 11]. Defendant represented that she wished to represent herself in the proceeding and the Court proceeded based on that representation. 
The Court rejected the First Agreement on the record as procedurally defective after review because, inter alia, it did not comply with the maintenance guidelines statute requirements for a knowing waiver of maintenance where a party is self-represented (there was no statutory calculation included) and because it did not specify what the presumptively correct child support would be pursuant to the Child Support Standards Act based upon an alleged deviation. Additionally, the parties had not detailed a sufficient basis to support their request to deviate downward from the presumptively correct award of child support for the one remaining unemancipated child of the marriage [NYSCEF #30, pp. 6-7] (see DRL 240[1-b][f]; see also generally Surage v Surage, 224 AD3d 860 [2 Dept.,2024]; see also generally Alliger-Bograd v. Bograd, 180 AD3d 975 [2 Dept.,2020]). 
The Court adjourned the matter to March 24, 2025 to give the parties an opportunity to execute a procedurally sufficient agreement and to provide the defendant with additional time to consult with and/or retain counsel or to proceed to a preliminary conference [NYSCEF #30, p. 7].
It is undisputed that on March 18, 2025, the day after the court appearance, outside the presence of the Court, where the First Agreement was rejected, the parties executed an amended proposed agreement (the "Second Agreement") [NYSCEF #31] and that defendant-wife was not represented by counsel at the time she executed that Second Agreement. The Second Agreement includes a Child Support Standards Act calculation [NYSCEF #31, pp. 10-14] and a maintenance guidelines calculation [NYSCEF #31, pp. 16-18] and also includes a "Legal Representation" provisions that provides "[e]ach party has had the opportunity to obtain legal [*3]counsel but have waived such right. The Wife has agreed to contribute $1,500 towards the Husband's legal fees" notwithstanding that in the "First Agreement" the defendant-wife was not the monied spouse. Nonetheless, on March 24, 2025, less than a week after executing the Second Agreement, counsel for defendant filed a notice of appearance [NYSCEF #14]. 
On March 24, 2025, the defendant appeared with counsel and the Court learned that defendant was intending to challenge the agreement and would not allocute the "Second Agreement" on the record.[FN1]

On April 23, 2025, the defendant through counsel filed an order to show cause [NYSCEF #17] seeking to:
(i) vacating so much of the Stipulation of Settlement executed on March 18, 2025 with respect to custody;(ii) vacating so much of the Stipulation of Settlement executed on March 18, 2025 with respect to child support;(iii) vacating so much of the Stipulation of Settlement with respect to waiver of maintenance;(iv) awarding defendant temporary maintenance in the amount of $2,200.00 per month;(v) awarding defendant pendente lite attorneys' fees in the amount of $10,000.00; and(vi) awarding defendant such other and further relief as this court deems just and proper.Plaintiff filed an affirmation in opposition [NYSCEF #38] and plaintiff's counsel filed affirmation in opposition [NYSCEF #29]. Defendant filed an affirmation in reply [NYSCEF #40] and defendant's counsel also filed affirmation in reply [NYSCEF #39]. On May 29, 2025, the parties and their counsel appeared for oral argument on the motion [NYSCEF #43; Tr. 5/29/2025].
Calculations Based Upon Inaccurate Incomes Does Not Constitute Knowing WaiverIn her affirmation in support of the order to show cause, defendant's counsel argues that the provisions of the "Second Agreement" where defendant-wife waived child support and maintenance should be "set aside as unfair and one-sided given the absence of disclosure" among other things including lack of financial disclosure; disparity in incomes between the parties; miscalculation of the parties' respective incomes; and, finally, defendant's lack of legal representation while plaintiff was represented by counsel created a disparity in bargaining power because defendant did not know her legal rights [NYSCEF #17, p. 2]. Defendant's counsel argues that the calculations included in the Second Agreement are not based on the parties' actual incomes. She argues that the maintenance guidelines and Child Support Standards Act calculations in the Second Agreement did not provide defendant with an opportunity to make a knowing waiver as required by DRL 236 because the incomes used by plaintiff's counsel in those calculations do not accurately reflect the parties' incomes and, she argues, that "the failure to include maintenance and support calculations that are truly reflective of the parties' incomes should constitute a fatal defect" and that the Court should, at minimum, vacate those support provisions [NYSCEF #17, p. 3]. Defendant's counsel argues that the calculations in the Second [*4]Agreement are "completely skewed" [NYSCEF #17, p. 5] that "[t]he computations put into this Stipulation were so off-base that they acted to deceive more than to inform" [NYSCEF #39, pp. 2-3].
In her affirmation in support, defendant-wife avers that she notified plaintiff's counsel that the incomes he used the calculations are not accurate but that he responded that it "does not change anything anyway as child support is being waived" [NYSCEF #21] and that "it was just technical to make things simple so that the judge accepts them" [NYSCEF #18, p. 4]. Defendant-wife annexed text messages allegedly between her and plaintiff's counsel in support of this representation [NYSCEF #21]. Defendant asserts that the income used by plaintiff's counsel are too low for the plaintiff and too high for herself which result in calculations that are not accurate [NYSCEF #18, p. 5]. She avers that had plaintiff's counsel utilized what she believes are the parties' actual incomes to run the calculations and "[h]ad I been made aware of these calculations, I would never have agreed to execute the Stipulation" [NYSCEF #18, p. 6].
Plaintiff's counsel argues that the Second Agreement includes the statutorily required calculations and that the parties engaged in financial disclosure and that, in effect, defendant's application is based on "distortion of both fact and law" [NYSCEF #29, p. 5]. Plaintiff's counsel argues that the Second Agreement "is a paragon of fairness, meticulously crafted to balance the parties' financial positions and obligations" [NSYCEF #29, p. 6]. Plaintiff vigorously argued that while there was a full waiver of maintenance guidelines support that he believes that the terms of the equitable distribution settlement inure to defendant's benefit because, he argues, she can invest her lump-sum equitable distribution award to generate "financial flexibility" for her support all "without reliance on monthly support payments" which would terminate upon remarriage. This financial situation, he contends, benefits defendant because she may remarry if she chooses to do so without the financial impact of losing maintenance support [NYSCEF #29, p. 7]. 
Notwithstanding plaintiff's counsel's numerous arguments for why plaintiff believes that the Second Agreement is a "a paragon of fairness", in his affirmation in opposition, plaintiff's counsel concedes that the income he used for the defendant in the calculation of maintenance guidelines and Child Support Standards Act disclosures is not accurate. In fact, he contends that the incomes he utilized for defendant in those calculations did not included approximately $200,000.00 in annual undisclosed income that plaintiff now asserts defendant earns from a variety of cash income streams [NYSCEF #29, pp. 8-9]. Plaintiff's counsel now asserts that the income asserted by defendant that was used in the calculation is greatly underreported and part of a "a pattern of obfuscation [by defendant] designed to mislead the Court" [NYSCEF #29, p. 9]. Nonetheless, plaintiff's counsel argues that because plaintiff agreed to utilize that allegedly underreported income in the calculations for defendant that it "supports the fairness of the maintenance waiver . . . " even though the calculation was not accurate [NYSCEF #29, p. 9]. 
Plaintiff's counsel, in his affirmation in opposition concedes that the incomes used in the statutory support calculations do not reflect the parties' financial realities; however, he still asserts that the parties' agreement "was the product of three months of fair, transparent, and voluntary mediation" [NYSCEF #38, p. 4-5]. Notwithstanding this assertion that the negotiation was "fair" plaintiff's counsel conceded on the record on March 17, 2025, that he filed the RJI to "force" the settlement because plaintiff felt like the three (3) months of negotiations was taking too long. Defendant contends that part of the delay in the negotiations was because she was trying to find legal counsel without having financial resources to pay for counsel. Plaintiff's [*5]counsel also conceded on May 25, 2025 that defendant agreed to terms in the Second Agreement not from a knowing waiver of what the maintenance guidelines calculation was based on the parties' actual incomes but because she also "knew her spouse [plaintiff] would not agree to give spousal support" so she was forced to negotiate an attempted agreement where support was not involved [NYSCEF #43, p. 19]. 
Pursuant to the New York Post-divorce Maintenance Guidelines (Domestic Relations 236 (B)(6), the calculation of maintenance guidelines must be provided where there is a self-represented party, as there is here. Parties are entitled to opt-out of the post-divorce maintenance computational formula established in Domestic Relations Law § 236 provided that the parties comply with Domestic Relations Law § 236(B)(3). Domestic Relations Law § 236(B)(3) states that:
"An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded. Such an agreement may include . . . provision for the amount and duration of maintenance or other terms and conditions of the marriage relationship, subject to the provisions of section 5-311 of the general obligations law, and provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment."Here, effectively, defendant contends that she waived her right to spousal support without knowledge of what she would potentially have been entitled to under the post-divorce maintenance formula contained in the Domestic Relations Law because plaintiff initially did not provide her with any maintenance guidelines calculation in the "First Agreement" and then after the Court rejected that proposed agreement the plaintiff provided a maintenance guidelines calculation in the "Second Agreement" using incorrect incomes. Plaintiff concedes that defendant's claim that the incomes used are inaccurate is true but he contends that the inaccurate incomes he used in the calculation inures to defendant's benefit because he believes defendant has more than $200,000.00 in undisclosed annual cash income that he asserts he did not include in her income for purposes of the maintenance guidelines calculation. He claims that while he did not use accurate incomes in the maintenance guidelines calculations in the "Second Agreement" that it is not a basis to set aside the maintenance waiver provision because, he argues, the incomes he used allegedly inure to defendant's financial benefit. Defendant disputes plaintiff's allegation that she is underreporting her income and asserts that she only earns a little over $40,000.00 annually.
The Court rejects plaintiff's contentions. Waiver of maintenance under the maintenance guidelines statute is predicated upon what can be termed "knowing waiver" of what the guidelines sum of maintenance would be but for the waiver. The statute unequivocally mandates that the calculation must be fully articulated where there is a self-represented party (see Domestic Relations Law § 236(B)(6)(g)). 
This requirement is intended to ensure that litigants who do not have the benefit of legal counsel have a full and fair opportunity to know what they may be entitled to under the maintenance guidelines statute in the form of an explicitly articulated sum. Only after such an articulated sum is detailed can a self-represented party or parties make a "knowing waiver" of that right. Without an expressly articulated sum resulting from the statutory calculation, any [*6]"waiver" by a self-represented litigant is, pursuant to the statute, not knowingly made. The same is true when it comes to utilizing accurate incomes in the calculation: if inaccurate incomes are created and used in the calculation that are not reflective of the parties' incomes then whatever calculation results there can be no "knowing waiver" nor can a Court sanction a knowingly admitted false statement.
To satisfy the knowing waiver aspect of the maintenance guidelines statute, both parties must provide their incomes and the full calculation, as of the time they enter into the prenuptial agreement, where either or both parties are self-represented because without the inclusion of incomes as of the date of the agreement and the full calculation under the guidelines statute formula, there could be no knowing waiver because the guidelines sum of maintenance would not be explicitly known and, as such, the parties could not expressly waive it (see generally Spiegel v Spiegel, 206 AD3d 1178 [3 Dept.,2022]).
Here, defendant avers that she notified plaintiff's counsel that the income he used in the calculation was not accurate and she annexed text messages in support of this assertion and claims that plaintiff's counsel responded that the inaccuracies in the incomes did not matter because the parties were waiving support. Plaintiff's counsel does not dispute defendant's rendition of these assertions or that the text messages are inaccurate. Plaintiff argues, in effect, that it is harmless error that he included a maintenance guidelines calculation that he concedes is not based on accurate incomes because, he alleges, he used a greatly reduced income for the defendant. 
As such, there is no issue of fact between the parties related to whether accurate incomes were used for the calculation and, therefore, there is no need for the Court to hold an evidentiary hearing on that issue (see Wood v Wood, 134 AD3d 1028, 1029 [2 Dept.,2015]).
It would be antithetical to the protections of the maintenance guidelines statute to hold that the requirement for knowing waiver for self-represented litigants can be satisfied by including any calculation — regardless of whether that calculation comports with the parties' actual incomes — where a party challenges the calculation. When inaccurate incomes are used, it is akin to providing no calculation at all and there can be no knowing waiver as contemplated under the statute. Here, the calculation included in the Second Agreement was not based on the parties' incomes and, as such, the Court cannot find that the full presumptive maintenance calculations were provided to the defendant, who was not represented by legal counsel: therefore, the entire provision related to spousal maintenance must be vacated.
Child Support Standards Act ProvisionAdditionally, the parties' proposed child support provision must be rejected based on plaintiff's own admission: that calculation was not based on accurate incomes. The Child Support Standards Act requires the Court to scrutinize downward deviations in child support before approving them to safeguard the right of the child to support (see DRL 240[1-b]; see generally Hall v. Pancho, 149 AD3d 735 [2 Dept.,2017]). No such scrutiny is possible where it is undisputed that the incomes utilized in the calculations do not comport with their actual incomes. Here, it is not disputed that the incomes used are not consistent with the parties' actual incomes so the purported Child Support Standards Act presumptive child support calculation is not accurate and, therefore, the Court cannot assess whether there is a sufficient basis to approve the proposed child support. As such, for the same reasons detailed herein above as to the basis [*7]for invalidating the maintenance provision, the child support provision must also be vacated.
Plaintiff's Counsel's Contention That He Is Only A ScribnerDuring the initial court appearance on March 17, 2025, plaintiff's counsel attempted to explain the missing statutory calculations stating on the record that " . . . this agreement was worked out between the parties for [sic] a mediator. I, for the most part, just drafted what was presented to me" [NYSCEF #30, p. 7]. Plaintiff's counsel renewed this assertion in defending the inaccurate calculations presented to the Court in the Second Agreement as a basis for waiver during oral argument on May 25, 2025 arguing that "[t]his settlement was brought to me to basically act as a scribner and [sic] draft it. That is what I did. My settlement matches what the mediator provided to both parties" [NYSCEF #43, p. 14]. The Court does not adopt counsel's argument, in effect, that attorneys have little or no obligation to the Court to present accurate statutory support calculations to the Court or that it is permissible for counsel to, in effect, "create" statutory calculations to present to the Court to attempt to obtain Court approval of agreements in contested matrimonial actions where one or both parties are attempting to avoid compliance with the maintenance guidelines or Child Support Standards Act statutes. The Court rejects plaintiff's counsel's notion that a lawyer appearing on behalf of a party can disavow papers they submitted on a claim that they were allegedly merely a "scribner" and that that attorney has no obligation to the integrity of the process when preparing documents in a proceeding or that an attorney can knowingly utilize falsified incomes in "disclosing" support calculations mandated to be included by statute.
Validity of Remainder of AgreementPlaintiff's counsel argues that the Court should not vacate any portion of the parties' Second Agreement because of the strong public policy in the State of New York to uphold enforceable stipulations of settlement. Here, the Court found that the support provisions are not enforceable, as detailed hereinabove.
Plaintiff also objects that the defendant initially only sought to vacate the support provisions of the Second Agreement instead of seeking to vacate the entire agreement. Plaintiff's counsel argues that selective vacatur is patently impermissible under New York law and that defendant cannot "cherry-pick benefits" to vacate while keeping other provisions related to equitable distribution [NYSCEF #29, p. 10]. 
Plaintiff's counsel argues that the Second Agreement was "wholistic, the waiver of spousal support was part and parcel part of the negotiation and calculation for other provisions . . . " and he asserts, in effect, that the plaintiff would never have agreed to the other financial provisions in the Second Agreement except for defendant's waiver of maintenance guidelines and child support provisions [NYSCEF #29, p. 10]. 
Defendant's counsel in her affirmation in reply concurs with plaintiff's counsel that if the support provisions are vacated that the "[d]efendant would be happy to have the entire agreement vacated" so that the parties, now both represented by counsel, can engage in full financial discovery and resolve all ancillary financial issues between them [NYSCEF #39, p. 4]. Defendant through counsel renewed that agreement to "start from scratch" during oral argument on May 29, 2025 [NYSCEF #43, p. 9] and that "the agreement be thrown out and we get the [*8]opportunity to do discovery and to litigate this case" [NSYCEF #43, p. 11].
Plaintiff's Contention That Second Agreement Is Valid and Enforceable Despite No AllocutionAt oral argument on May 29, 2025, plaintiff's counsel argued that if the Second Agreement did not survive allocution that he would move for a judgment of divorce on the basis that the Second Agreement was a "valid" agreement and that it would be defendant's burden to have it set aside. Based on the facts presented, the Court rejects that argument: here, there is no valid agreement because, as detailed herein, the Second Agreement cannot survive judicial review related to the maintenance guidelines or child support provisions nor could it survive allocution. Additionally, that support agreement is inextricable tied to equitable distribution by plaintiff's counsel's own admission.
The Court Has Not "Approved" Any of the Proposed AgreementsThe Court rejects plaintiff's counsel assertion in his affirmation [NYSCEF #29, p. 1] that the defendant is "attempting to dismantle" a "court-approved agreement": the Court never approved and/or allocuted the parties on the proposed "Second Agreement". 
The Court further rejects plaintiff's contention that the Court is, in effect, bound by the terms of the agreement the parties signed outside of Court because it is what they negotiated with the assistance of a community member regardless of whether it complies with the statutory requirements of DRL 236. It is well-established that matrimonial agreements are subject to heightened scrutiny (see generally Smith v Smith, 129 AD3d 934 [2 Dept.,2015]) and, furthermore, that there are statutory requirements related to stipulations of settlement related to waiver of maintenance guidelines where a party is not represented (see DRL 236(B)) and related to deviations in child support (see DRL 240 [1-b][f]).
Allegation of OverreachingDefendant alleges, in effect, that the plaintiff engaged in overreaching to get her to settle the divorce on terms that are unfair to her including, inter alia, not providing her with calculations based on the parties' actual incomes so that she understood what sums of support she was waiving. She argues that the Court should hold an evidentiary hearing to examine the totality of the circumstances around her claims, inter alia, that she relied on plaintiff's counsel reassurances that she did not need her own legal counsel based on her familiar relationship with him and her year-long text communications with him surrounding the marital discord between the parties. Defendant does not dispute that plaintiff eventually told her that he was retained by plaintiff and represented only the plaintiff but she contends that plaintiff's counsel also told her that she did not need to obtain independent legal counsel because the terms of the agreement was in her best interest. Defendant's counsel argues that the Second Agreement is "patently unfair" and that "no rational person utilizing common sense would make it and no fair or honest person would accept such an agreement" including the equitable distribution provisions [NYSCEF #17, p. 4]. 
Defendant contends that in February 2023 after twenty-five (25) years of marriage the [*9]marital discord escalated and that, she alleges, based on plaintiff's control of the parties' finances and her inability to access financial resources, she was unable to obtain legal counsel. Plaintiff disputes this claim. 
Defendant avers that when the marital tensions escalated, she "started to text [plaintiff's counsel], plaintiff's current attorney who I was unaware had been contacted by plaintiff, and later retained by him" [NYSCEF #18, p. 2]. She contends that the parties participated in a mediation with a member of their religious community but that she "really wanted to speak to an attorney to be sure that I was doing the right thing" but that "I did not have access to any marital funds and with the little money I earned I needed to pay my expenses and therefore I was not in a position to pay for an attorney's legal advice" [NYSCEF #18, p. 3]. Plaintiff argues that defendant selected the mediator — her uncle — and defendant does not dispute that fact; however, defendant's counsel asserts that this community member has no legal training, and that defendant had no legal representation in the negotiation.
She avers that for over a year she was in communication with plaintiff's counsel related to legal questions and that for a large part of that time she did not know that he had been retained by plaintiff to represent him in this divorce action. It is unclear, because there is no retainer agreement filed by plaintiff in NYSCEF at this time, when plaintiff retained his attorney and established that attorney-client relationship.
Defendant annexed dozens of text messages between her and — allegedly — the plaintiff's attorney dating from March 2024 through March 2025 [NYSCEF #20] including numerous telephone calls between them. Some of the numerous questions defendant allegedly posed to plaintiff's counsel in these text messages included "[m]y husband moved out two weeks ago on his own will. Now he says he's moving back in. Is there anything I can do to stop this?" to which someone responded "not unless he is violent" [NYSCEF #20, p. 1]. In another text, defendant asked "[m]y husband is moving back in tomorrow and I told him that he can't come into the bedroom. It's my safe space. He can be int [sic] he [sic] other rooms. He's threatening to not listen" to which she received this response: "put a lock or try for an order of protection" [NYSCEF #20, p. 2]. There are several pages of such text exchanges including into January 2025 when defendant texts "Hi [plaintiff's counsel], I was served with divorce papers. He wanted to scare me into making a decision. Now I need a lawyer to counter respond to it by the 5th of February. Can you help me with this. Please and thanks for your attention" to which the response was "a motion or just a summons" and "I'd have to have you come in for a consult review the motion with you and discuss being retained because once I appear on a summons I am stuck on a case" [NYSCEF #20, p. 3-4].
Defendant avers that the text messages she annexed are between her and plaintiff's counsel. Plaintiff's counsel does not dispute defendant's claim that these text messages are between them or that the responses are his to defendant. Defendant contends that she communicated with plaintiff's counsel because at the time she did not know that he would later be retained by and represent the plaintiff who was the subject of these legal inquiries. 
Defendant further contends that during a video call with plaintiff's counsel she asked if she needed to retain her own attorney and that plaintiff's counsel indicated that he was plaintiff's attorney but that "you do not need representation because what we did here was for your mutual benefit" [NYSCEF #18, p. 4]. The proposed Second Agreement provides that both parties had the opportunity to seek legal advice and that both parties had waived that right; however, defendant has now retained counsel and that counsel has appeared on her behalf.
Defendant avers that she relied on these alleged representations by plaintiff's counsel that the proposed agreement was "for both parties' benefit" and that she "did not need representation" when she signed the First Agreement [NSYCEF #18, p. 4] but that after the Court rejected the First Agreement on the record during the March 17, 2025 for procedural defects and after the plaintiff's counsel insisted on using incorrect income for her in the support calculation disclosures in the Second Agreement and told her that, in effect, it did not matter because it was just to "satisfy the Court" so that the Court would approve the Second Agreement that she, in effect, grew concerned and contacted an attorney who "explained to me that I had been given incorrect advice" by her community mediator and plaintiff's counsel [NYSCEF #18, p. 5].
Defendant annexed text messages she sent to plaintiff's counsel raising that the income he used in the calculations was not accurate and the response, allegedly from plaintiff's counsel, that it "doesn't change anything anyway you are both waiving child support" [NYSCEF #21]. Plaintiff's counsel does not dispute these text messages. Defendant contends that after consulting with her attorney and finally seeing the child support and maintenance guidelines calculations based on what she believes are the parties' actual incomes that "I would never have agreed to execute the Stipulation" [NYSCEF #18, p. 6].
Plaintiff's counsel did not address, dispute or contradict the facts, circumstances or rendition of defendant's allegations related to her allegations related to text communication between them.
Plaintiff asserts that his attorney never advised defendant that she did not need legal counsel but rather that plaintiff's counsel "explained that the stipulation, as a product of our mediated agreement, could be drafted and accepted by the court without her having separate counsel — a procedural truth, not a recommendation against representation" [NYSCEF #38, p. 6].
In terms of equitable distribution, defendant's counsel alleges numerous times that the values of marital property were reduced by plaintiff's counsel and that the defendant-wife may be entitled to a much larger distributive award. At oral argument she asserted that "if the agreement is thrown out, there will be an appraisal and we'll start from the beginning" [NYSCEF #43, p. 10]. Furthermore, defendant's counsel argues that because the plaintiff-husband had sole control of the parties' finances during the marriage that many of the debts he alleged were "marital debts" were, in fact, incurred solely by the plaintiff for non-marital purposes, including expenses related to alleged gambling [NYSCEF #39, p. 3].
Plaintiff and plaintiff's counsel both vigorously dispute defendant's claims that the Second Agreement is the product of, in effect, overreaching. They both claim that the equitable distribution provision of the Second Agreement inures to defendant's benefit because, inter alia, plaintiff assumes the financial obligation of "$100,000 in wedding expenses for their son" as part of the settlement [NYSCEF #29, p. 7]; however, upon review of the proposed Second Agreement it appears that any such provision was entirely removed from the Second Agreement as there is no mention of the assumption of costs for the son's wedding or of any sum — $100,000.00 or other — related thereto. It is not clear whether this provision was removed intentionally or not inasmuch as plaintiff, whose counsel drafted the Second Agreement, asserts that his willingness to assume this financial responsibility was one of many financial concessions he made so that defendant would waive maintenance.
Severability/Invalidity of Remaining ProvisionsIn her May 20, 2025, reply affirmation, defendant's counsel argued that based on the fact that the support provisions are statutorily defective and the alleged overreaching that the entire Second Agreement should be vacated [NYSCEF Doc # 40], including that the defendant-wife was not informed that under the Child Support Standards Act she was entitled to child support. While not initially requesting that the entire agreement be vacated, the defendant through counsel consented to plaintiff's position that if the support provisions were vacated that the whole agreement should be set aside so that the parties could, in effect, "start over". Plaintiff and plaintiff's counsel vigorously argued that the Second Agreement was a "wholistic" agreement and that the equitable distribution provisions were all based on the waiver of support; however, plaintiff did not unequivocally consent on the record to vacating the entire agreement. As such, unless there is a written and signed stipulation by the parties to vacate the Second Agreement in toto, based upon the Court's decision related to the support provisions, the Court will hold a limited hearing on the issue of severability of the remainder of the Second Agreement from the support provisions. At the hearing, the Court will also have to first address defendant's allegation of overreaching. 
If there is a signed stipulation vacating the Second Agreement, the parties shall notify the Court no later than Friday, January 30, 2026. If there is a stipulation vacating the Second Agreement on consent then it appears that any issue related to a claim of overreaching related to the Second Agreement would be moot because that agreement would be vacated and, as such, no evidentiary hearing on that allegation would be required. If there is no stipulation resolving the issue the Court will hold the evidentiary hearing on Thursday, February 26, 2026 at 10:00 a.m.
Counsel Fees ApplicationCounsel fees are denied with right to renew upon proper application after Statements of Net Worth are filed by both sides.
Preliminary ConferenceThe Court must now conduct a preliminary conference. The plaintiff has not filed an affidavit of net worth: he shall do so no later than Monday, January 26, 2026. Defendant's applications for pendente lite support and an award of counsel fees are held in abeyance to the next court appearance where the Court will hear oral argument on those issues if there is no interim agreement. Based on the submission of plaintiff's affidavit of net worth, the defendant shall have the right to file a sur-reply no later than Monday, February 2, 2026 and the plaintiff shall have the right to file a sur-sur reply no later than Tuesday, February 17, 2026. The sur-reply and the sur-sur reply are limited to the pendente lite support and counsel fee relief sought by defendant. If plaintiff seeks to file a cross-motion related to the pendente lite relief, he shall notify the defendant and the Court no later than Wednesday, February 4, 2026 so that a briefing schedule can be set to avoid delay in this matter. This matter is adjourned to Thursday, February 26, 2026 at 10:00 a.m. in-person for a preliminary conference and the evidentiary hearing, if necessary.

 Conclusion
The Court vacates the maintenance and child support provisions as detailed herein. The Court need not reach the issue of overreaching at this time and will hold an evidentiary hearing [*10]on that issue and the issue of severability if there is no stipulation on consent to vacate the full Second Agreement. Counsel fees are denied with right to renew upon proper application after Statements of Net Worth are filed by both sides.
This shall constitute decision and order of the court.
ENTER:Hon. Jeffrey S. SunshineJ. S. C.

Footnotes

Footnote 1:In Kings County, all contested matrimonial agreements are allocuted on the record and a grounds inquest hearing is held on the record.